IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                        :
WILLIAM HAMILTON                    :         No. 3:07 CV 148 (JBA)
                        :
V.                                       :
                        :
WARDEN LAJOIE, ET AL.           :
                        :         DATE: APRIL 1, 2009
                        :
---------------------------------------------------------x

RECOMMENDED RULING ON DEFENDANTS' MOTION TO DISMISS

William Hamilton, an inmate at Cheshire Correctional Institution, commenced this action on January 31, 2007, pro se and in forma pauperis, against defendants State of Connecticut, Warden Michael LaJoie, and fourteen employees of the Connecticut Department of Corrections ["DOC"]: Captain Stephen Faucher, Captain Mark Verdone, Lieutenant Patrick Lalumiere, Lieutenant Thomas Woodworth, Lieutenant Andrew Dowd, and Correctional Officers Joseph Iozzia, Christopher Pafias, Michael Tuthill, Michael Rouillard, Brandon Johnson, James Turner, Steven Discordia, Robin Woodward, and Bradley Thompson. (Dkt. #1). On June 29, 2007, plaintiff filed an Amended Complaint (Dkt. #18), which was superseded by a Second Amended Complaint, filed August 21, 2008 (Dkt. #42), in which plaintiff alleges excessive force arising out of an incident at Corrigan-Radgowski Correctional Institution on or about August 31, 2005 (Count One); deliberate indifference in failing to provide plaintiff adequate medical care in the aftermath of said incident (Count Two); negligence (Count Three); and willful misconduct (Count Four).

On September 26, 2008, defendants filed a Motion to Dismiss (Dkt. #49), which was denied on consent on October 27, 2008. (Dkt. #55; see also Dkts. ##36, 39). On

December 11, 2008, defendants filed the pending Motion to Dismiss (Dkt. #72),[1] in response to which plaintiff filed his objection on December 30, 2008. (Dkt. #75). On January 22, 2009, United States District Judge Janet Bond Arterton referred the pending Motion to this Magistrate Judge. (Dkt. #78).

For the reasons stated below, defendants' Motion to Dismiss (Dkt. #72) is <u>granted</u>.

## I. STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. <u>See Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. <u>See AmBase Corp. v. City Investing Co. Liquidating Trust</u>, 326 F.3d 63, 71-72 (2d Cir.)(citations omitted), <u>cert. denied</u>, 540 U.S. 1017 (2003). The issue on a motion to dismiss is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his or her claims. <u>Branham v. Meachum</u>, 77 F.3d 626, 628 (2d Cir. 1996)(citation omitted). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York</u>, 375 F.3d 168, 176 (2d Cir. 2004)(citation omitted). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to <u>pro se</u> litigants." <u>Gomes v. AVCO Corp.</u>, 964 F.2d 1330, 1335 (2d Cir. 1992)(citations omitted).

---

[1] Attached is a copy of case law.

## II. FACTUAL BACKGROUND

The Court accepts the following facts as true, taken from plaintiff's Second Amended Complaint. (See Dkt. #42). On or about August 31, 2005, plaintiff and his cell mate were the subject of a "random shakedown," which involved plaintiff being removed from his cell to a room downstairs while correctional officers searched his cell. (Id. ¶¶ 1, 4-5). During the search, the correctional officers removed "[c]ontraband," which appeared to be some of plaintiff's magazines, on which chewing tobacco had been poured. (Id. ¶¶ 6-7). Plaintiff disputed that the magazines were contraband, and then began to return to his cell when he asked another correctional officer to move so that he could "secure in his cell." (Id. ¶¶ 7-8). That correctional officer responded that he would not move and said that plaintiff "better not touch him either." (Id. ¶ 8). At that point, plaintiff saw at least eleven correctional officers running towards him, so he ran down the stairs to the broom closet, grabbed a broom, and went under the unit camera so that it would not record the situation. (Id. ¶ 9). Prior to the officers "tackling" plaintiff, the broom was removed from his hands, and defendant Rouillard yelled that he was hit in the head with the broom. (Id. ¶ 10). Plaintiff was pinned to the ground and was sprayed with a chemical agent by defendants Dowd and Lalumiere; defendant Lalumiere sprayed plaintiff even after he informed them that he has asthma. (Id. ¶ 11). Plaintiff was handcuffed and shackled, and then escorted down the hallway while a camcorder recorded plaintiff. (Id. ¶ 13).

Thereafter, plaintiff commenced this lawsuit in which he alleges that defendants engaged in excessive force, and acted with negligence, causing plaintiff to suffer what he described as life-threatening injuries, including abrasions to his right earlobe and right shoulder, contusions to his head, post-traumatic stress, flashbacks, and an "abnormal

wariness of correctional staff." (Id. ¶¶ 16, 28-36).[2]  According to plaintiff, Warden LaJoie acted with deliberate indifference in failing to properly train his staff, in not reviewing the camcorder tapes, and in not treating plaintiff at an outside hospital for the injuries suffered during this incident (id. ¶¶ 18-25), and defendant Lalumiere acted with deliberate indifference in spraying plaintiff with a chemical agent after plaintiff was sprayed by defendant Dowd, and even after plaintiff told him that he has asthma. (Id. ¶¶ 26-27). Further, according to plaintiff, each of the defendants willfully falsified their reports of the incident (id. ¶¶ 37-41), defendants Lalumiere and Faucher willfully allowed the camcorder tapes and downloaded surveillance disk to not fully reflect the incident (id. ¶ 42), and defendant Faucher contacted the State Police, knowing false charges would be filed against plaintiff. (Id. ¶ 43).

### III. DISCUSSION

Defendants move to dismiss this action on seven grounds: (1) the claims against defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution; (2) the state law negligence claims against defendants are barred by the doctrine of sovereign immunity; (3) the State of Connecticut is not a person subject to liability under 42 U.S.C. § 1983; (4) plaintiff has failed to exhaust his administrative remedies; (5) plaintiff has failed to allege that his prosecution has been overturned or called into question; (6) plaintiff has failed to allege the personal involvement or responsibility as to defendants Iozzia and LaJoie; and (7) plaintiff has failed to state a claim upon which relief can be granted for claims arising under 42 U.S.C. §§ 1985 and 1986, and for the claim of

---

[2]Plaintiff also alleges that he was "falsely" convicted of assaulting an officer, for which he was sentenced to a one-year concurrent term of imprisonment. (Id. ¶ 16).

deliberate indifference by prison officials to plaintiff's serious medical need in violation of the Eighth Amendment. (Dkt. #72, Brief at 2, 6-20). In response, plaintiff argues that: (1) the State of Connecticut has waived its Eleventh Amendment sovereign immunity through legislation and is therefore subject to liability for damages under 42 U.S.C. § 1983; (2) plaintiff exhausted his administrative remedies by filing a grievance[3] regarding the matter; (3) the criminal conduct of defendants as alleged in this case "[c]o[ll]aterally . . . proves that [plaintiff] was innocent of [his] criminal charges"; (4) plaintiff will be able to prove at trial the involvement of defendants LaJoie and Iozzia; and (5) inconsistencies in defendants' reports suffice to state claims under 42 U.S.C. §§ 1985 and 1986. (See Dkt. #75, Brief at 2-10).

A. ELEVENTH AMENDMENT IMMUNITY

A lawsuit seeking money damages "against the State itself, or against an agency or department of the State" may not be maintained "unless the State has waived its sovereign immunity." Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982)(citation omitted). In enacting 42 U.S.C. § 1983, Congress did not intend to override the sovereign immunity of the States. See Quern v. Jordan, 440 U.S. 332, 341 (1979). Rather, state agencies who represent an official arm of the State possess "the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the [S]tate itself." Posr v. Court Officer Shield # 207, 180 F.3d 409, 414 (2d Cir. 1999)(citation omitted). The Eleventh Amendment immunity which protects the State against suits for damages also applies to state officials who are sued for damages in their official capacity. See Kentucky v. Graham, 473 U.S. 159, 169 (1985)(citation omitted). It has long been established that a suit against a defendant

---

[3] Plaintiff's grievance was denied on grounds that the incident at issue "was not a grievable matter." (Dkt. #75, Brief at 4).

state official in his official capacity is deemed to be a suit against the State if any damages recovered from said official would be paid by the State. See Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 464 (1945)(citations omitted). In such cases, "the [S]tate is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . ." Id. (citation omitted).

Plaintiff seeks monetary damages against defendants in their official capacities as employees of the DOC, which entity is an official arm of the State of Connecticut. Defendants are State officials who, absent a waiver, are immune from damages when sued in their official capacity. According to plaintiff, however, the State has waived its sovereign immunity through legislation, and is therefore amenable to suit. (See Dkt. #75, Brief at 3-4). Specifically, plaintiff argues that the creation of a Lost Property Board within the DOC, pursuant to Section 5 of Connecticut Public Act 05-170, 2005 CONN. PUB. ACTS 345, which handles property claims not exceeding $3,500, constitutes a waiver by the State of Connecticut, through the Claims Commissioner, of the State's Eleventh Amendment sovereign immunity. (See Dkt. #75, Brief at 3-4). While the Claims Commissioner may have delegated responsibility for small property claims to the Lost Property Board, there is no indication that the State of Connecticut waived its Eleventh Amendment immunity from suit. Thus, absent a waiver by the State or valid congressional override, which also does not exist in this case, the Eleventh Amendment bars plaintiff's damages claims against the individual defendants sued in their official capacities.[4]

---

[4] In light of this conclusion, the Court declines to address plaintiff's claim, or lack thereof, of personal involvement on the part of defendants Iozzia and LaJoie.

## B. STATE LAW CLAIMS

In Counts Three and Four of the Second Amended Complaint, plaintiff alleges negligence and willful misconduct by the defendants. (See Dkt. #42, ¶¶ 28-44). Defendants argue that the doctrines of sovereign and statutory immunity bar plaintiff's tort claims against defendants in their individual and official capacities, and that plaintiff has failed to exhaust his administrative remedies available to him. (Dkt. #72, Brief at 7-10).

### 1. SOVEREIGN IMMUNITY

The doctrine of sovereign immunity "protects state officials and employees from lawsuits resulting from the performance of their duty . . . [and] protects the state against lawsuits as well as protecting against liability." Hultman v. Blumenthal, 67 Conn. App. 613, 620 (citation & internal quotations omitted), certif. denied, 259 Conn. 929 (2002). This immunity applies to lawsuits against a state as well as to lawsuits against state officers in their official capacities. See Miller v. Egan, 265 Conn. 301, 313 (2003)(internal quotation marks & citation omitted)("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.")  "It is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit [, or waives its] sovereign right not to be sued [with a] clear intention to that effect[,] disclosed by the use of express terms . . . ." First Union Nat'l Bank v. Hi Ho Mall Shopping Ventures, Inc., 273 Conn. 287, 293 (2005)(citation & internal quotations omitted).

Plaintiff argues, once again, that Section 5 of Connecticut Public Act 05-170, 2005 CONN. PUB. ACTS 345, is an indication that the State has waived its immunity from suit. (See Dkt. #75, Brief at 4-5).  For the reasons stated in Section III.A. supra, the doctrine of sovereign immunity bars plaintiff's tort claims against defendants in their official capacity.

## 2. STATUTORY IMMUNITY

Under CONN. GEN. STAT. § 4-165, state officials and employees who are sued in their individual capacities possess a limited immunity from suit. Under this statute, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." CONN. GEN. STAT. § 4-165. State employees, therefore, are not "personally liable for negligent actions performed within the scope of their employment." Miller, 265 Conn. at 319.

Moreover, Section 4-165(a) directs "[a]ny person having a complaint for such damage or injury [to] present . . . [the] claim against the state" to the State Claims Commissioner who may authorize suit against the state or state official in federal court. CONN. GEN. STAT. § 4-165(a); see McKinley v. Musshorn, 185 Conn. 616, 621 (1981). In the case of authorization, the plaintiff bringing suit must then "allege such authorization and the date on which it was granted . . . ." CONN. GEN. STAT. § 4-160(c).

Plaintiff has not alleged that he filed a claim with the State Claims Commissioner or that he received the requisite authorization to file suit against the State and its officials, and as stated above, state employees are not liable for negligent acts performed within the scope of employment. Furthermore, plaintiff has not established facts "that reasonably support" his allegations that defendants' conduct "was in excess of their statutory authority," thus permitting plaintiff to overcome this immunity. Hultman, 67 Conn. App. at 624.[5] Moreover, "statutory immunity provided by § 4-165 does not apply if the doctrine of sovereign immunity does apply." Id. at 620 (citation omitted). Accordingly, plaintiff's negligence and wilful

---

[5]In addition to damages, plaintiff seeks declaratory relief so that this exception to such immunity applies. See Miller, 265 Conn. at 314.

8

misconduct claims against the defendants in their individual capacities are barred by statutory immunity under CONN. GEN. STAT. § 4-165.

### C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ["PLRA"], 42 U.S.C. § 1997e(a), requires an inmate to exhaust his administrative remedies before bringing a Section 1983 action with respect to prison conditions, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002)(citation omitted). Complete exhaustion of available administrative remedies must occur before a 42 U.S.C. § 1983 action is commenced. See Neal v. Goord, 267 F.3d 116, 122-23 (2d Cir. 2001), overruled in part on other grounds, Porter v. Nussle, 534 U.S. 516 (2002). The Second Circuit has observed that in the context of PLRA litigation, a district court must consider three factors before deciding whether a prisoner has failed to exhaust administrative remedies: (1) whether administrative remedies were "available" to the prisoner; (2) whether the defendants are estopped from asserting an exhaustion defense; and (3) whether "special circumstances" exist that excuse the prisoner from the exhaustion requirements. See Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 445 (2d Cir. 2006)(internal quotations & citation omitted).

The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense, such that defendants "bear the burden of proof [on this issue] and prisoner plaintiffs need not plead exhaustion with particularity." McCoy v. Goord, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003)(multiple citations omitted). Moreover, "[b]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss."

Nicholson v. Murphy, No. 3:02 CV 1815(MRK), 2003 WL 22909876, at *6 (D. Conn. Sept. 19, 2003). It follows, therefore, that "the failure to exhaust is not a ground for dismissal unless it is readily apparent from plaintiff's pleadings and/or attachments." Torrence v. Pesanti, 239 F. Supp. 2d 230, 233 (D. Conn. 2003).

In this case, plaintiff asserts that he exhausted his administrative remedies as he filed a grievance that was denied. (Dkt. #75, Brief at 4). However, for the reasons stated in Section III.B supra, plaintiff has not alleged that he filed a claim with the State Claims Commissioner or that he received the requisite authorization to file suit against the State and its officials. Accordingly, plaintiff has not exhausted his administrative remedies prior to initiating this suit.

### D. LIABILITY OF STATE UNDER 42 U.S.C. § 1983

Plaintiff has sued the State of Connecticut as a defendant in this action. (See Dkt. #42). Defendants correctly contend that the State of Connecticut is not a person subject to liability under 42 U.S.C. § 1983. Section 1983 authorizes suit only against a "person" who has deprived another of federal statutory or constitutional rights under color of state law, 42 U.S.C. § 1983, and "neither a State nor its officials acting in their official capacities are 'persons'" subject to suit under § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

### E. FAILURE TO ALLEGE PROSECUTION HAS BEEN OVERTURNED

Defendants argue that to the extent plaintiff is challenging his conviction for assaulting an officer, which arose out of the incident that is the subject of this lawsuit, as an unconstitutional deprivation under 42 U.S.C. § 1983, plaintiff has failed to allege that his conviction has been overturned, expunged, declared, invalid, or called into question. (See

Dkt. # 72, Brief at 11-12). Plaintiff responds that evidence presented in the case at bar will prove he is innocent of the criminal conviction he received as a result of the incident. (See Dkt. #75, Brief at 6).

In Heck v. Humphrey, 512 U.S. 477 (1994), the U.S. Supreme Court explained that "civil tort actions," such as those brought pursuant to § 1983, "are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and cannot proceed if they would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." Id. at 486. As a result, in order to recover damages for an unconstitutional harm which would render a conviction or sentence invalid, a § 1983 plaintiff must prove:

> [T]hat the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (emphasis in original)(footnote omitted). Under this "favorable termination" rule, a § 1983 action seeking monetary damages is not cognizable where "the basis for the damages claim necessarily demonstrates the invalidity of the conviction," thus in reality "attacking . . . the fact or length of . . . confinement." Id. at 481-82 (alterations in original), quoting Preiser v. Rodriguez, 411 U.S. 475, 490 (1973); Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006)(citation omitted), cert. denied sub nom. Jones v. Peralta, 127 S. Ct. 3006 (2007). Relief under § 1983 might be available, however, in circumstances where a plaintiff is challenging the conditions of his confinement rather than the fact or duration of confinement. See Jenkins v. Haubert, 179 F.3d 19, 27-29 (2d Cir. 1999).

11

Plaintiff has not alleged that his conviction has been reversed on appeal, or called into question by a federal court's issuance of a writ of habeas corpus, nor has plaintiff sought to appeal his conviction. An award of damages on plaintiff's current claims would necessarily imply the invalidity of his conviction for assaulting an officer from whom he now seeks damages. As a result, the plaintiff fails to state a claim cognizable under § 1983.

### F. FAILURE TO STATE A CLAIM

Defendants argue that the plaintiff has failed to state a claim upon which relief can be granted for claims pursuant to 42 U.S.C. §§ 1985 and 1986, and for plaintiff's claim of deliberate indifference. (Dkt. #72, Brief at 15-20). Plaintiff argues, with respect to §§ 1985 and 1986 claims, that defendants' incident reports and video tapes are inconsistent, indicating untrustworthiness and the existence of a conspiracy. (See Dkt. #75, Brief at 9-10). Regarding the claims of deliberate indifference, plaintiff argues that despite receiving injuries similar to one of the defendants during the altercation, plaintiff "was not afforded the same level of care." (Id. at 8-9).

#### 1. 42 U.S.C. §§ 1985 and 1986

Generally, § 1985(3) prohibits conspiracies which deprive someone of equal protection of the laws. In stating a claim under § 1985(3),[6] plaintiff must allege that:

> (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege.

Lopez v. McGill, No. 3:08 CV 1931 (CSH), 2009 WL 179787, at *7 (D. Conn. Jan 21,

---

[6]The first two subsections of 42 U.S.C. § 1985 are inapplicable to the present case as they deal with conspiracies preventing federal officials from performing their duties and conspiracies to prevent witness participation in court proceedings, respectively.

2009)(citation omitted). Plaintiff must also show that the conspiracy was racially motivated. Id. Section 1986 confers no rights on its own, but serves to provide relief for any wrongs committed pursuant to § 1985. Id.

Plaintiff has failed to allege any facts in his Second Amended Complaint of a racial motivation for any alleged conspiracy, nor has he provided a factual basis for a conspiracy claim. Absent a violation of § 1985, there is no violation of § 1986. Accordingly, neither of these claims can survive.

### 2. DELIBERATE INDIFFERENCE

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976)(citation omitted), reh. denied, 429 U.S. 1066 (1977). To prevail on such a claim, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Mere negligence will not support a Section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988)(citation omitted).

There are both subject and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Additionally, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66.

In this case, plaintiff has not sued a medical professional. Further, while plaintiff alleges that he suffered "life-threatening injuries," abrasions to his right earlobe and shoulder,

13

and a contusion on his head (Dkt. #42, ¶ 16) do not rise to the level of harm of sufficiently serious injury that would "shock the conscience" or constitute a "barbarous act." McCloud, 677 F. Supp. at 232.  Additionally, with respect to the subjective element, plaintiff alleged that defendant LaLumiere stated that he "[did not] know that the chemical agent was used" when plaintiff was pepper sprayed for the second time.  (Dkt. #42, ¶ 12).  Taken together, plaintiff fails to state a claim for deliberate indifference.

## IV. CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss (Dkt. #72) is **granted**.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** Fed. R. Civ. P. 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 1st day of April, 2009 at New Haven, Connecticut.

/s/Joan Glazer Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge