UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| William Hamilton, Jr.,<br>    *Plaintiff*,<br><br>    *v.*<br><br>Michael Lajoie, et al.,<br>    *Defendants*. | Civil No. 3:07cv148 (JBA)<br><br><br><br>August 3, 2009 |

**RULING ON PLAINTIFF'S OBJECTIONS TO
RECOMMENDED RULING ON MOTION TO DISMISS**

In this civil-rights action brought pursuant to 42 U.S.C. § 1983, Plaintiff William Hamilton claims that he was injured by correctional officers on August 31, 2005 when he was an inmate at Corrigan-Radgowski Correctional Center. Proceeding *pro se* and *in forma pauperis*, Hamilton seeks compensatory and punitive damages and alleges (1) unconstitutionally excessive force, (2) inadequate supervision, (3) negligence, and (4) willful misconduct. Hamilton's second amended complaint names several current and former Corrigan-Radgowski personnel as defendants: Warden Michael Lajoie; Captains Stephen Faucher and Mark Verdone; Lieutenants Patrick Lalumiere, Thomas Woodworth, and Andrew Dowd; and Correctional Officers Joseph Iozzia, Christopher Pafias, Michael Tuthill, Michael Rouillard, Brandon Johnson, James Turner, Steven Discordia, Robin Woodward, and Bradley Thompson (collectively, "Defendants").

On April 1, 2009, Magistrate Judge Joan Glazer Margolis issued a recommended ruling granting the Defendants' motion to dismiss, to which Hamilton objects in full.

**I.     Background**

Mindful of the latitude to which a *pro se* plaintiff is entitled at the pleadings stage, *see Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008), Hamilton's second amended complaint

alleges the following facts.

On August 31, 2005, following an inspection for contraband, Hamilton was near his cell when he saw that a number of correctional officers were coming toward him. Fearing for his safety, he grabbed a broom and situated himself in view of the unit video camera. Several correctional officers then tackled him, and, in the course of that scuffle, Rouillard yelled that he had been hit in the head with the broom. Even though Hamilton was not resisting, the officers pinned him to the ground. With Tuthill's assistance, Dowd sprayed chemical agent in Hamilton's face. When Hamilton complained that he had asthma, Lalumiere sprayed Hamilton even more. Meanwhile, several additional officers participated in the violent struggle—Pafias, Johnson, Turner, Woodward, Thompson, Woodworth, Dowd, and Discordia.

Once Hamilton was subdued, the officers escorted him away. The video footage of the incident, however, does not show the full extent of the force Hamilton contends the officers used on him. As a result of the officers' actions, Hamilton alleges, he suffered head trauma, abrasions to his ear and shoulder, and post-traumatic stress.

## II.     Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Defendants have moved to dismiss on several grounds, arguing that Hamilton's claims are barred by sovereign and statutory immunity, that he has failed to exhaust his administrative remedies, that he has not sufficiently alleged personal involvement by the Defendants, and that he has failed to state viable claims for relief. Because Hamilton has

objected to Magistrate Judge Margolis's determinations in whole, the following constitutes this Court's *de novo* review, pursuant to Federal Rule of Civil Procedure 72(b) and Local Civil Rule 72.2(b), of the proffered bases for dismissal.

### A.     Immunity

Defendants invoke the Eleventh Amendment, which bars damages actions against state officials acting in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Although Hamilton does not specifically name the State of Connecticut as a defendant in the body of his second amended complaint, he does include the "State of Connecticut, Department of Correction, Corrigan C.I." among the list of defendants in an appendix. Just like state officials sued in their official capacities, the states themselves are also immune from suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). There is no indication that Connecticut has waived its sovereign immunity, nor—despite the reference to a "Declaratory Judgment" in his request for relief—is Hamilton seeking prospective injunctive or declaratory relief under the *Ex parte Young* doctrine. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Thus, insofar as Hamilton has sued the State of Connecticut and Connecticut state officials in their official capacities seeking money damages, his claims cannot proceed.

### B.     Count One: Excessive Force

Turning to Hamilton's individual claims, he first alleges that the Defendants used excessive force on him in violation of his constitutional rights. As Hamilton emphasized in his objection to the recommended ruling, he named the Defendants in their official as well as their individual capacities, and so the Eleventh Amendment is not a complete bar to this claim. Hamilton's factual allegations of unreasonable force, asserted against the several

correctional officers—namely, Rouillard, Tuthill, Dowd, Lalumiere, Pafias, Johnson, Turner, Woodward, Thompson, Woodworth, Dowd, and Discordia—sufficiently state a claim of unconstitutional conduct. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Under the Eighth Amendment, "inmates have the right to be free from the 'unnecessary and wanton infliction of pain' at the hands of prison officials." *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In this respect, Defendants' motion to dismiss is denied.

### C. Count Two: Deliberate Indifference

The second count of Hamilton's complaint alleges that Warden Lajoie was deliberately indifferent to the injuries Hamilton suffered on August 31, in that Lajoie failed to properly train the correctional officers, to adequately supervise the medical staff, to review the video evidence of the incident, and to order outside medical treatment for Hamilton's injuries. By comparison, Hamilton alleges, Rouillard received prompt medical care at an outside hospital for his head injury.

"[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Thus, a supervisor like Lajoie can be held liable under § 1983 for an underlying constitutional violation if there is an allegation of one of the following:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145. According to the allegations in his second amended complaint, Hamilton seeks

4

to hold Lajoie liable in his individual capacity not under a theory of *respondeat superior*, but rather based on specific conduct by Lajoie before and after the August 31 incident. Hamilton alleges that Lajoie was responsible for the policies that led to his injuries at the hands of the correctional officers, and also for the procedures followed by the medical staff following the incident. Thus, because Hamilton has stated a valid claim of supervisor liability under § 1983, Defendants' motion to dismiss is denied as to count two.

### D. Count Three: Negligence

In count three, Hamilton alleges negligence against Lajoie, Lalumiere, Rouillard, Tuthill, Iozzia, and Faucher. Defendants move to dismiss on the ground of statutory immunity. Specifically, Defendants cite Connecticut General Statutes § 4-165(a), which provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." By the Connecticut Supreme Court's reading, this provision means that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 828 A.2d 549, 561 (Conn. 2003).

Hamilton does not dispute that this claim arises out of conduct by correctional officers during the scope of their employment for the state. Rather, he contends that his negligence claim should be allowed to proceed because it is for a jury to determine whether the Defendants' conduct was "wanton, reckless or malicious." This distinction goes to the very definition of a claim for negligence: if the Defendants acted wantonly, they may be held liable for committing some other tort, but not for negligence. *See, e.g.*, *Dubay v. Irish*, 542 A.2d 711, 719 (Conn. 1988) (quoting Prosser & Keeton and discussing the distinction

between negligent, wanton, and reckless misconduct); *Brock v. Waldron*, 14 A.2d 713, 714 (Conn. 1940) (noting that "[t]here is a wide difference between negligence and a reckless disregard of the rights or safety of others").

If Hamilton proves that the Defendants acted wantonly, that will support his claim in count one that they violated his constitutional rights and are liable under § 1983. Insofar as Hamilton contends that the Defendants acted *negligently*, however, § 4-165(a) bars recovery. Accordingly, in this respect, Hamilton's objections are overruled, and Defendants' motion to dismiss count three is granted.

### E. Count Four: Willful Misconduct

Hamilton's final claim is that the Defendants engaged in willful misconduct. Specifically, Hamilton charges them with falsifying and coordinating their reports of the August 31 incident, allowing the video tapes to not fully reflect what happened, and filing false charges with the state police. In his objection to Magistrate Judge Margolis's recommended ruling, Hamilton makes clear that this count alleges that the Defendants conspired to violate his civil rights.

Hamilton cites 42 U.S.C. §§ 1985 and 1986 in his complaint, but only § 1985(3) is applicable to this case. To plead a viable claim of conspiracy under § 1985(3), a plaintiff must allege "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–28 (1993) (citations and quotation marks omitted). Even reading Hamilton's allegations in this count generously, he has not alleged that the misconduct he describes was motivated by any race- or class-

based discriminatory animus. His second amended complaint alleges that the Defendants conspired to suppress evidence of the August 31 incident, but the only inference to be drawn is that the Defendants acted out of a desire to conceal their own misconduct, not with discriminatory animus toward Hamilton. Although Hamilton mentions in his objection that the prison personnel had a "reputation for racially motivated activity which will be shown at trial," such conclusory allegations, even by a *pro se* plaintiff, are not enough to state a plausible claim under § 1985(3). *See Iqbal*, 129 S. Ct. at 1949–50 (holding that conclusory allegations of a conspiracy are not enough to satisfy the pleading requirements of Rule 8).

Thus, Hamilton's objections in this respect are overruled, and the Defendants' motion to dismiss count four is granted.

### F. Remaining Issues

Given that Hamilton's claims of excessive force and supervisory liability under the Eighth Amendment survive Defendants' motion to dismiss, a few issues remain. Contrary to Defendants' suggestion, these § 1983 claims are not subject to dismissal for lack of administrative exhaustion, because "failure to exhaust is an affirmative defense . . . [and] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Although Hamilton's second amended complaint mentions his allegedly wrongful conviction for assaulting Rouillard, this Court has already held that such claim cannot proceed under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), but is otherwise no bar to his other viable claims. (Section 1915A Ruling and Order, May 4, 2007 [Doc. # 11] at 8.)

Finally, there is the matter of each Defendant's personal involvement, which is a prerequisite to liability under § 1983 for unconstitutional conduct. *Hernandez*, 341 F.3d at

144. Hamilton's Eighth Amendment claims in counts one and two specifically allege that most of the correctional officers participated in the deprivation of his constitutional rights. With the claims in counts three and four now dismissed, however, there are no specific allegations directed at Faucher, Verdone, or Iozzia. These Defendants are thus dismissed from this case.

### III.   Conclusion

Accordingly, Hamilton's objections [Doc. # 83] to Magistrate Judge Margolis's recommended ruling [Doc. # 80] are overruled in part, and Defendants' motion to dismiss [Doc. # 72] is granted in part and denied in part. Hamilton's claims in counts three and four of his second amended complaint are dismissed, as are all claims against Defendants Faucher, Verdone, and Iozzia. Because Hamilton has stated plausible claims of excessive force and supervisory liability under the Eighth Amendment against the remaining Defendants, his claims for relief in counts one and two remain viable.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of August, 2009.