UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| William Hamilton,<br>    *Plaintiff*,<br><br>v.<br><br>Patrick Lalumiere and Andrew Dowd,<br>    *Defendants*. | Civil No. 3:07cv148 (JBA)<br><br><br><br>February 16, 2011 |

RULING ON CROSS–MOTIONS FOR JUDGMENT AS A MATTER OF LAW

Plaintiff William Hamilton, an inmate at Corrigan Correctional Institution ("CCI") sued Connecticut Department of Corrections personnel Lieutenant Patrick Lalumiere and Lieutenant Andrew Dowd under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights for events that occurred on August 31, 2005 when Defendants used CAP–STUN (oleoresic capsicum aerosol, or "pepper spray") on him, the circumstances of which Plaintiff claimed constituted excessive force and deliberate indifference to serious medical need.

The claims were tried to a jury, which returned a verdict in favor of both Defendants on his excessive force claim, in favor of Dowd on his claim of deliberate indifference, and in favor of Hamilton on his claim that Lalumiere was deliberately indifferent to Hamilton's serious medical need for failing to promptly or properly decontaminate him after the CAP–STUN application, in violation of the Eighth Amendment. The jury awarded Plaintiff $10 nominal damages and $1,000 punitive damages. Lalumiere and Hamilton both move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and in the alternative, Hamilton moves for a new trial under Rule 59.

I.   Standard

Under Rule 50, the District Court may only grant judgment as a matter of law "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . [there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against him." *Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005) (internal quotation and citation omitted). "In other words, a Rule 50 motion must be denied unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that . . . could have [been] reached." *Id.*

A new trial should only be granted under Fed. R. Civ. P. 59 if the trial court is convinced "that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

III.   Discussion

A.   Defendant Lalumiere's motion for judgment [Doc. # 156]

Lalumiere moves for judgment as a matter of law on the deliberate indifference verdict against him, arguing that the evidence the jury heard could not reasonably have supported a verdict against him, based on the evidence that Hamilton did not suffer any adverse medical consequences from CAP–STUN beyond the period immediately following its application, that Hamilton did not seek further medical treatment after August 31, 2005, and that when Lalumiere asked Hamilton if he was "okay" while detaining him in the hallway before taking him into the medical ward, Hamilton answered "Yes." Lalumiere also

points to his own trial testimony and that of Defendants' expert Mark Strange that Lalumiere followed proper protocol after spraying Hamilton with CAP–STUN by removing Hamilton from the contaminated area and that there were no showers immediately available to Lalumiere to decontaminate Plaintiff during the time when access to treatment in the medical unit was delayed.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on this claim, Hamilton needed evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *Id.* at 104–06. Factors to consider in determining whether a medical condition is serious enough to give rise to deliberate indifference claim include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted). Deliberate indifference requires "something more than mere negligence, but proof of intent is not required." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

Although Defendants presented evidence that Lalumiere removed Hamilton from the contaminated area and that the decontamination shower was not immediately available, the jury also heard testimony that Hamilton was double–sprayed with CAP–STUN—Dowd and Lalumiere contemporaneously deployed CAP–STUN close to his face, Plaintiff's expert Roy Bedard's explanation that CAP–STUN is designed to cause incapacitating pain and

3

creates the sensation of not being able to breath, and testimony that decontamination of Plaintiff was delayed, contrary to Department of Corrections' Administrative Directive 6.5, which requires that "[d]econtamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control . . . [and] shall include at a minimum: (1) flushing of the eyes; (2) a shower and change of clothing; (3) medical attention; and (4) removal of the person from the affected area if possible." The jury also heard Hamilton's testimony that right after he was sprayed, he exclaimed that he had asthma to which a correctional officer responded "oh yeah" before punching him; that Hamilton repeatedly told officers, including Lalumiere, that "he was having a hard time breathing," as mucous "c[ame] out [his] nose and mouth," in response to which Lalumiere told him not to worry because he would soon be decontaminated but was not; and that he was repeatedly denied requests for and decontamination despite there being a shower in the pod where Plaintiff was sprayed with CAP–STUN. The jury also watched the "reverse–escort" video, showing Lalumiere restraining a compliant, non–combative Hamilton in a hallway suffering the continuing effects of CAP–STUN. Although Lalumiere knew that a corrections officer was being treated in the medical ward, and thus that Plaintiff's treatment would be delayed, the video showed him making no interim efforts of any sort to relieve Plaintiff's suffering, only making a perfunctory inquiry while observing Plaintiff's continuing symptoms. Additionally, the video showed that Plaintiff was ultimately allowed only two minutes in the shower, and he was removed because an officer restraining him in the shower complained about "getting wet."

From evidence that CAP–STUN causes intense pain, which is presumably why DOC officers are required to immediately decontaminate individuals sprayed with CAP–STUN,

4

that Hamilton told DOC officers that he suffered from asthma, that Hamilton told Lalumiere that he was unable to breathe after being sprayed with CAP–STUN, and that Lalumiere disregarded the DOC directive by taking no immediate decontamination steps beyond removing Plaintiff from the contaminated area (which Defendants sought to do to get him out of view of other agitated inmates), a reasonable jury could conclude that Lalumiere was deliberately indifferent to Hamilton's serious medical need.

Lalumiere also claims that he is entitled to qualified immunity on Hamilton's deliberate indifference claim, because "the law was not . . . clearly established that the [e]ffects of [CAP–STUN] constitute[] a serious medical need or that a person is to be provided with a shower of a specific length of time, or within a specific amount of time after [CAP–STUN] exposure." (Def.'s Mem. Supp. at 8.) Public officials are immune from liability for civil damages when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects a defendant if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (citations omitted). Well before August 2005, it was clearly established that deliberate indifference to a prisoner's serious medical needs constitutes an unlawful violation of that prisoner's Eighth Amendment rights. *See Estelle*, 429 U.S. at 104. Further, CAP–STUN is known to cause breathing problems, which Plaintiff complained of, was specifically developed to cause severe and incapacitating pain, DOC corrections personnel are trained to deploy it for this precise purpose and did so, and DOC

5

Administrative Directive 6.5, in effect at the time, mandated *immediate* decontamination, but Lalumiere, who did not lack means for immediate decontamination, failed to make any decontamination efforts for a period of time. Under the circumstances in this case, his claim that he is entitled to qualified immunity fails because it was not objectively reasonable for an officer to conclude that an asthmatic inmate complaining of breathing problems after being sprayed in the face at closer than minimum range with twice the typical amount of CAP–STUN did not have a potentially serious medical need for immediate decontamination measures. Therefore, Defendant's motion for judgment as a matter of law is denied.

B. Plaintiff's motion for judgment [Doc. # 158]

Plaintiff moves for judgment as a matter of law, or in the alternative, a new trial on the excessive force counts against both Defendants and the deliberate indifference count as to Dowd.

*1. Excessive force*

Hamilton first claims that based on the evidence introduced at trial, no reasonable jury could have concluded that the Defendants did not apply CAP–STUN maliciously and sadistically for the very purposes of causing harm, given the jury instruction that "[t]o prevail on his excessive–force claim, the Plaintiff must demonstrate by a preponderance of the evidence that the Defendants acted wantonly, and applied force maliciously and sadistically to cause him harm, and not in a good–faith effort to maintain or restore discipline." (Jury Ins. [Doc. # 143] at 13.) The evidence Plaintiff cites includes the incident video, which showed Defendants deploying CAP–STUN from a very close range after Plaintiff was already pinned down by several other correctional officers. Plaintiff emphasizes that Officer Rouillard's testimony that Plaintiff struck him in the head with a broom is not

6

credible since that alleged attack does not appear anywhere on the video covering the time–span of the incident, and therefore, the jury could neither have reasonably believed Defendants' assertion that Hamilton posed a threat to corrections officers because of the claimed broom–assault, nor have concluded that Defendants applied CAP–STUN in a good–faith effort to achieve a legitimate purpose of subduing him and protecting officers.

However, the jury also heard evidence that Hamilton had not been subdued prior to the CAP–STUN application, and even Plaintiff's expert Roy Bedard testified that the incident video was not conclusive as to whether Plaintiff was compliant prior to being sprayed. Additionally, Defendants testified that they were responding to a "Code Orange," the most serious code, and when they arrived in the "pod" where the altercation occurred, seven or more correctional officers were attempting to restrain Plaintiff, who remained non–compliant with their commands to stop struggling. Further, they testified that they each simultaneously applied a one–second burst of CAP–STUN on either side of Plaintiff's face and without knowledge of the other's identical action, to gain Hamilton's compliance, which each testified he believed was necessary for the safety of Hamilton and staff. There was evidence that Defendants were two to three feet from Hamilton when they sprayed him with CAP–STUN, although the Department's 2004 CAP–STUN Certification Program instructs officers to spray CAP–STUN "from a minimum of 5 feet."

Because the jury could have credited testimony that Hamilton was continuing to struggle with corrections officers when Defendants arrived and refused to comply with orders to desist, that Defendants only sprayed CAP–STUN for one second when they believed it necessary for the safety of Plaintiff and other corrections officers, the jury could have reasonably concluded that in spraying Plaintiff, Defendants acted in a good–faith effort

7

to maintain or restore discipline and not wantonly or maliciously. Therefore, Plaintiff's motion for judgment as a matter of law or for a new trial is denied as to Plaintiff's excessive force counts.

### 2. *Dowd's Deliberate indifference*

Hamilton also argues that based on the evidence presented at trial—that he was compliant after being sprayed and was not immediately decontaminated as required by Administrative Directive 6.5—no reasonable jury could have concluded that Dowd was not deliberately indifferent to Plaintiff's serious medical needs. However, Dowd testified that as the second–shift lieutenant, he was not responsible for the incident and left the scene before the reverse–escort began. Additionally, Lalumiere testified that as the first–shift lieutenant, he was responsible for actions that occurred during the incident, including the escort and decontamination.

Crediting the evidence that Dowd played no role in the decision not to decontaminate Hamilton immediately, the jury could have reasonably inferred that Dowd did not intend to deny or delay Hamilton's access to medical care, and therefore Plaintiff's motion for judgment as a matter of law or in the alternative for a new trial on his deliberate indifference count as to Dowd is denied.

III. Conclusion

Accordingly, Defendant's [Doc. # 156] Motion for Judgment as a Matter of Law and Plaintiff's [Doc. # 158] Motion for Judgment as a Matter of Law or in the alternative a New Trial are DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of February, 2011.